**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000323
31-JAN-2020
01:51 PM**

NO. CAAP-16-0000323

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
DENISE A. SAXTON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 15-1-0028)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Defendant-Appellant Denise A. Saxton (Saxton) appeals from the March 9, 2016 Judgment Guilty Conviction and Probation Sentence entered by the Circuit Court of the First Circuit (Circuit Court).[1] After a jury trial, the Circuit Court convicted Saxton in Count 1 of Assault Against a Law Enforcement Officer in the First Degree (AALEO) in violation of Hawaii Revised Statutes (HRS) § 707-712.5(1)(a) (2014),[2] and in Count 3 of Driving Without License (DWOL) in violation of HRS § 286-102 (2007).[3] Saxton was sentenced to five years probation in Count 1 with the special condition of 365 days of incarceration, and thirty days of incarceration in Count 3.

---

[1] The Honorable Colette Y. Garibaldi presided.

[2] HRS § 707-712.5 provides, in relevant part, "(1) A person commits the offense of assault against a law enforcement officer in the first degree if the person: (a) Intentionally or knowingly causes bodily injury to a law enforcement officer who is engaged in the performance of duty[.]"

[3] HRS § 286-102 provides, in relevant part, "(a) No person, except one exempted under section 286-105 . . . shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles."

On appeal, Saxton contends:[4] (1) the Circuit Court erred by admitting Department of Motor Vehicles (DMV) records absent an opportunity to cross-examine the custodian of records; (2) the State failed to present sufficient evidence that Saxton operated a motor vehicle without a license; (3) the Circuit Court erred by failing to administer a proper ultimate Tachibana[5] colloquy; and (4) the State committed prosecutorial misconduct by referring to witness testimony that had been stricken by the court.[6]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Saxton's points on appeal as follows and vacate the judgment and sentence.

(1) Saxton asserts that the Circuit Court erred by admitting State's Exhibit 9, referred-to by the parties as "the DMV printout" without affording him the opportunity to cross-examine the custodian of this record. More specifically, relying primarily on Crawford v. Washington, 541 U.S. 36, 50-51 (2004) and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 308-09 (2009), Saxton argues admission of the DMV Printout violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution and article 1, section 14 of the Hawai'i Constitution[7] because the prosecution did not establish

---

[4] In response to Saxton's November 4, 2019 motion through then-counsel Cynthia A. Kagiwada, this court temporarily remanded this case to the Circuit Court for the consideration of a motion to withdraw and appointment of new counsel. On December 4, 2019, the Circuit Court appointed David Bettencourt to represent Saxton. Our November 7, 2019 Order for Temporary Remand also provided that, if new counsel was appointed, new counsel would notify this court by December 23, 2019, whether leave to file an amended opening brief would be sought. No such notice has been given. We therefore, resolve this case on the original opening brief filed by Saxton.

[5] Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995).

[6] Saxton's Points of Error have been reordered chronologically and restyled for clarity.

[7] The Hawai'i Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused [.]" Haw. Const. art. I, § 14. The Confrontation Clause of the United States Constitution is virtually identical and provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the
(continued...)

the unavailability of the person certifying the DMV printout. Saxton's argument is without merit.

The State produced an October 19, 2015 Certified Copy of a printout of Saxton's driving records and which bear a certification signed by "Ricky Akase, Driver License Branch, Division of Motor Vehicle, Licensing and Permits, Department of Customer Services, City & County of Honolulu" certifying that it is a correct and complete copy of the record which "sets forth the activities of this agency that are authorized by law to be recorded."

First, Saxton concedes that the DMV printout is a "public record" and is not testimonial. Therefore, the DMV printout is not subject to Confrontation Clause analysis under the United States Constitution under Crawford. Indeed, the Court in Melendez-Diaz specifically distinguished the analyst's report identifying the substance seized, which was testimonial and subject to Confrontation Clause analysis, from "a clerk's certificate authenticating an official record--or a copy thereof--for the use as evidence". 557 U.S. at 322-23 ("A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not to do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant.") (emphasis in original), accord State v. Souleng, 134 Hawai'i 465, 472, 342 P.3d 884, 891 (App. 2015) (holding letter from Supervising Driver License Clerk *interpreting* drivers license records was testimonial).

Second, her argument that, even if the custodian of records' certification for the DMV printout is non-testimonial, the failure to make a showing that he was unavailable violated the Hawai'i Constitution's confrontation clause under State v. Fields, 115 Hawai'i 503, 168 P.3d 955 (2007), is not supported by the holding in that case. Fields did not decide the admissibility of business or public records. Id. Rather, it held that the declarant's loss of memory at trial still afforded

---

[7](...continued)
right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI.

3

Fields an adequate opportunity for cross-examination. Id. at 517-18, 168 P.3d at 969-70. Saxton cites no authority for the proposition that the custodian--or other authorized person--of business or public records, who certifies the authenticity of such records, must be unavailable before the record can be admitted at trial. Indeed, in State v. Fitzwater, 122 Hawai'i 354, 227 P.3d 520 (2010), which was decided after Fields, the Hawai'i Supreme Court explained that "admission of a speed check card for which a proper foundation has been established does not violate a defendant's Sixth Amendment rights." Id. at 371, 227 P.3d at 537. The supreme court analyzed the confrontation clause issue, concluded that the speed check card was non-testimonial, and that the confrontation clause would not be violated by its admission if proper foundation was established. Id. at 370-74, 227 P.3d at 536-40. Further, this court has held that the Intoxilyzer supervisor's sworn statements regarding accuracy testing of the machine which were required by rule to be maintained were public records under HRE Rule 803(b)(8), were self-authenticating public records under HRE Rule 902(4) and did not violate defendant's right to confrontation. State v. Ferreira, 139 Hawai'i 269, 388 P.3d 898, CAAP-15-0000459, 2016 WL 4491748, at *2 (App. Aug. 26, 2016) (SDO); State v. Hardoby, 134 Hawai'i 477, 344 P.3d 361, CAAP-12-0000514, 2015 WL 755866, *2-3 (App. Feb. 23, 2015) (SDO). State's Exhibit 9 was a self-authenticated public record which did not require the production or unavailability of the County employee certifying the record to satisfy Saxton's confrontation right under the United States or Hawai'i Constitutions.

(2)     Saxton makes two arguments that the State introduced insufficient evidence to support her conviction for DWOL.[8]  First, assuming admissibility, Saxton argues that the DMV Printout "consisted primarily of largely unintelligible abbreviations and unclear references" that without the aide of a DMV representative could not be deciphered by the finder of fact.

---

[8]     Saxton does not challenge the sufficiency of the evidence supporting her AALEO conviction.

Second, Saxton argues that the State failed to demonstrate that Saxton was not exempted from licensure pursuant to HRS § 286-102.

Saxton was charged with violating HRS §286-102(a) on or about December 31, 2014. Saxton disputes the sufficiency of evidence that she did not have a valid drivers license.[9]

Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." State v. Timoteo, 87 Hawai'i 108, 113, 952 P.2d 865, 870 (1997) (citation omitted). The DMV printout contains, among other things, the following: (1) Saxton's full name; (2) her birth date; (3) a description of Saxton's physical characteristics, which would have been on full view to the fact finder; (4) a field titled "LIC STATUS" reading "EXPIRED"; (5) a field titled "LIC EXPIRES" reading "03/26/2013"; (6) a field titled "ISSUE DATE" reading "05/04/2006"; (7) a field titled "CARD DATE" reading "05/29/2010"; (8) a field at the top of the page showing "DATE 10/19/15" indicating the date the record was prepared, consistent with the date it was certified. From this evidence a person of reasonable caution could infer that the record referred to Saxton, her license was issued on May 4, 2006, and expired March 26, 2013, and the license was still expired as of December 31, 2014, the date of the offense. Thus, viewed in the light most favorable to the State the DMV printout provides substantial evidence Saxton's driver's license was expired at the time of her arrest.

---

[9] HRS § 286-102(a) provided, at the time of this offense:

> (a) No person, except one exempted under section 286-105, one who holds an instruction permit under section 286-110, one who holds a provisional license under section 286-102.6, one who holds a commercial driver's license issued under section 286-239, or one who holds a commercial driver's license instruction permit issued under section 286-236, shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.

The statute then listed the categories of vehicles for which a driver's license was required, including personal automobiles. HRS § 286-102.

Saxton also contends that the State failed to prove that she was not exempted from licensure pursuant to HRS § 286-102.  However, in State v. Castillon, 144 Hawaiʻi 406, 407-08, 443 P.3d 98, 99-100 (2019), the Hawaiʻi Supreme Court held that, because Castillon bore the initial burden to produce "some evidence" to support an exemption and she failed to do so, the burden never shifted to the State to disprove beyond a reasonable doubt that she qualified for an exemption.  Saxton did not offer any evidence that she qualified for any of the statutory exceptions, and the burden never shifted to the State to disprove an exception.  We therefore conclude that Saxton's insufficiency of evidence claim is without merit.

(3)  Saxton makes two arguments that the Circuit Court's Tachibana colloquy was defective:  (a) the ultimate Tachibana colloquy failed to advise her that the trier of fact cannot hold the failure to testify against her, and (b) it was not a "true colloquy" required by State v. Han, 130 Hawaiʻi 83, 306 P.3d 128 (2013) and State v. Pomroy, 132 Hawaiʻi 85, 319 P.3d 1093 (2014).

It is undisputed that Saxton was not told, during the end-of-trial colloquy, that if she did not testify, the jury would be told they could not hold it against her.  Since this aspect of the Tachibana ultimate colloquy is required, "[o]nce a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307 (citing State v. Silva, 78 Hawaiʻi 115, 125, 890 P.2d 702, 712 (App. 1995).

> Under the harmless-beyond-a-reasonable-doubt standard, the question is "whether there is a reasonable possibility that error may have contributed to conviction." . . . .
>
> When deciding whether an error is harmless beyond a reasonable doubt, the error must be viewed "in the light of the entire proceedings and given the effect which the whole record shows it to be entitled."

State v. Akahi, 92 Hawai'i 148, 150-51, 988 P.2d 667, 669-70 (App. 1999) (citations omitted). The supreme court has held that "to determine whether a waiver [of a fundamental right] was voluntarily and intelligently undertaken, this court will look to the totality of the facts and circumstances of each particular case." Han, 130 Hawai'i at 89, 306 P.3d at 134 (brackets in original) (quoting State v. Friedman, 93 Hawai'i 63, 66-67, 996 P.2d 268, 273-74 (2000) (internal quotation marks omitted)).

Here, three factors weigh in favor of concluding there is no reasonable possibility that the failure to tell Saxton her failure to testify would not be taken against her may have contributed to her conviction. First, the court's Lewis[10] pretrial colloquy contained the missing Tachibana right, which Saxton indicated she understood. Saxton was thereby made aware that the jury would be instructed that it could not hold her silence against her in making its decision prior to the time she would be required to make the decision to testify. Second, during the Tachibana colloquy, Saxton requested and was granted leave to consult with her counsel. After this brief consultation, she affirmatively stated that she chose not to testify. Thus, we can infer Saxton understood she could consult with counsel before making her decision. Finally, where Saxton chose not to testify without a fresh assurance that such a choice would not be used against her by the jury, its repetition would have supported that choice and would not have caused her to change her mind. On these facts, we conclude that this defect in the Tachibana colloquy did not affect her decision and was harmless.

However, regarding Saxton's "true colloquy" argument, we cannot conclude the error was harmless. Saxton argues the Circuit Court was required to "break down the colloquy into logical and understandable segments" as was done in State v. Christian, 88 Hawai'i 407, 967 P.2d 239 (1998).

We note that while the Christian trial court "assiduously followed the procedures mandated in Tachibana[,]"

---

[10]     State v. Lewis, 94 Hawai'i 292, 12 P.3d 1233 (2000).

the case does not instruct that all courts must follow that same script in the future. Christian, 88 Hawai'i at 420, 967 P.2d at 252. Instead, the standard is whether, under the facts and circumstances, the record demonstrates that the defendant knowingly, voluntarily, and intelligently waived the right to testify. See, e.g., Han, 130 Hawai'i at 89, 306 P.3d at 134. Here, the Circuit Court did not ask Saxton to affirm her understanding of each specific aspect of her Tachibana rights. More importantly, the court failed at any time to ask Saxton whether she understood the rights discussed. Consequently, under prevailing case law, the record does not demonstrate that Saxton knowingly, voluntarily and intelligently waived her right to testify. See State v. Celestine, 142 Hawai'i 165, 170-72, 415 P.3d 907, 912-14 (2018).

The State, beyond the bare statement that any error in the colloquy was harmless, does not explain how this is so. As the supreme court observed in Han, "it is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case." Han, 130 Hawai'i at 93, 306 P.3d at 138 (citation and internal quotation marks omitted). We cannot tell from this record what Saxton would have testified to regarding the altercation with the officers or the status of her drivers license. Therefore, we cannot conclude that the error was harmless.

(4) For the first time on appeal, Saxton asserts that her DWOL conviction must be vacated because the Deputy Prosecuting Attorney (DPA) committed prosecutorial misconduct by referring in his closing argument[11] to stricken testimony from Officer Mead that a hole punched in a driver's license indicated it was expired. "If defense counsel does not object at trial to prosecutorial misconduct, [the appellate court] may nevertheless

---

[11] The DPA argued,

It was expired on that date. And you know that exactly because Officer Mead, when he saw her license, what did he tell you? There's a hole punch to the corner. So beyond a reasonable doubt defendant was not duly qualified to operate that category of motor vehicle.

8

recognize such misconduct if plainly erroneous." State v. Rodrigues, 113 Hawaiʻi 41, 47, 147 P.3d 825, 831 (2006). "We may recognize plain error when the error committed affects substantial rights of the defendant." State v. Cordeiro, 99 Hawaiʻi 390, 405, 56 P.3d 692, 707 (2002) (citations and internal quotation marks omitted).

Error is deemed harmful "[i]f there is a reasonable possibility that error might have contributed to a conviction in a criminal case, then the error cannot be harmless beyond a reasonable doubt, and the conviction must be set aside." State v. Klinge, 92 Hawaiʻi 577, 583, 994 P.2d 509, 515 (2000) (citation omitted). The reviewing court considers: "(1) the nature of the misconduct; (2) the promptness of a curative instruction or lack of it; and (3) the strength or weakness of the evidence against the defendant." State v. Mara, 98 Hawaiʻi 1, 16-17, 41 P.3d 157, 172-73 (2002)

The DPA's argument was misconduct because it referred to Officer Mead's testimony and strongly drew on the jury's recollection of the conclusion stated by the officer but stricken by the court. State v. Yip, 92 Hawaiʻi 98, 111, 987 P.2d 996, 1009 (App. 1999) ("In closing arguments, it is improper to refer to evidence [that] is not in the record or has been excluded by the court."). As to the third factor, there was substantial evidence, based on the DMV Printout that indicated that Saxton's license was expired at the time of her arrest. While it was permissible to infer from the fact that her license was expired that Saxton recklessly disregarded the risk that she was driving with an expired license, we cannot say that the evidence against her was strong enough that the invitation by the prosecutor to consider evidence that had been stricken was ignored or deemed unnecessary. It is possible the improper argument contributed to Saxton's conviction.

Given this possibility, we cannot conclude the improper argument was harmless and therefore requires us to vacate the conviction and order a retrial.

Based on the foregoing, the March 9, 2016 Judgment Guilty Conviction and Probation Sentence entered by the Circuit

Court of the First Circuit is vacated and the case is remanded for proceedings consistent with this summary disposition order.

DATED:  Honolulu, Hawai'i, January 31, 2020.

On the briefs:

John N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

10